

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 04 C 4112 | DATE | October 8, 2004 |
| CASE TITLE | U.S. ex rel. Davila v. Chandler | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The clerk is directed to substitute Nedra Chandler as the respondent. After careful consideration of the entire record, Davila's § 2254 petition [1-1] is denied in its entirety. The clerk is directed to enter a Rule 58 judgment and to terminate this case. Enter Memorandum and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | | number of notices |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | OCT 15 2004 | date docketed |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials |
| | Copy to judge/magistrate judge. | 2004 OCT 15 AM 8:19 | 14 |
| RTS/c | courtroom deputy's initials | FILED | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ex rel. EDWIN DAVILA,[1] ) | |
| Petitioner, ) | |
| ) | |
| v. ) | 04 C 4112 |
| ) | |
| NEDRA CHANDLER,[2] ) | |
| Respondent. ) | |

DOCKETED
OCT 1 5 2004

## MEMORANDUM AND ORDER

Petitioner Edwin Davila's pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is before the court. For the following reasons, Davila's petition is denied.

I.  **Background**

The court will presume that the state court's factual determinations are correct for the purposes of habeas review as Davila has not provided clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002). The court thus adopts the state court's recitation of the facts, and will briefly summarize the key facts which are relevant to Davila's § 2254 petition. *See People v. Davila*, No. 1-98-3002 (1st. Dist. Dec. 19, 1997) (unpublished order) (direct appeal); *People v. Davila*, No. 95-CR-24591 (Cir. Ct. Mar. 30, 1998 (unpublished order) (first state post-conviction petition); *People v. Davila*, No. 98-

---

[1] The record refers to the plaintiff as both Davila and Davilla. In the interests of consistency, and because the Illinois Department of Corrections lists the plaintiff's name as Edwin Davila, *see* http://www.idoc.state.il.us/subsections/search/default.asp, the court will use the single-l spelling of his name.

[2] Davila's petition named Jerry Sternes as the respondent. Davila is currently incarcerated at the Dixon Correctional Center. Accordingly, Nedra Chandler, the warden of that facility, is hereby substituted as the respondent. *See* Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts.

1477 (1st. Dist. July 19, 1999) (unpublished order) (affirming same); *People v. Davila*, No. 1-01-158 (1st. Dist. Oct. 22, 2003) (unpublished order) (affirming summary dismissal of second state post-conviction petition), as modified on February 4, 2004.

On July 2, 1995, at 1:30 a.m., Michael Ybarra, accompanied by Jaime/Jamie Alvarez (who was in the front passenger seat) and Ivar Velasco (who was in the back seat), was driving around Chicago's northwest side looking for marijuana. Ybarra stopped at a red light at the intersection of Ashland and Blackhawk Streets, where a group of men outside a restaurant were flashing gang signs and yelling "King Killer" and "Disciples" at the passing cars. This did not sit well with the occupants of Ybarra's vehicle, who shouted expletives to the group of men as Ybarra drove off.

The group of men chased after Ybarra's car on foot and Velasco saw a white Buick pull out of the restaurant parking lot and join the chase. Next, the Buick pulled up on the driver's side of Ybarra's car. Both Ybarra and Velasco saw Davila, who was driving the Buick, from a distance of seven or eight feet. Davila rolled down his window, flashed gang signs, threw two bottles at Ybarra's car, and drove off. Ybarra, who clearly was not conflict-adverse, turned and followed Davila's car down a side street.

Davila parked his car diagonally across the street, blocking it so Ybarra could not pass. Davila jumped out of his car and yelled something to a group of men (the record does not specify whether this was the original group from the restaurant or a new group), who began to pelt Ybarra's car with food and bottles. Both Ybarra and Velaso saw Davila clearly by the light of a nearby streetlight. They also saw him grab an object from someone in the group. They realized

that Davila was now armed when he opened fire on Ybarra's car from a distance of ten feet, shattering several windows, and then continued to shoot as he approached the car.

When Alvarez yelled, "Let's get out of here," Ybarra put his car in reverse, escaped down a nearby alley, and drove to an emergency room. Alvarez, who was bleeding from his head, later died, and Ybarra received treatment for a torn artery in his leg. After the shooting, there was broken glass and food on the street and the windshield of Ybarra's car was covered with food.

On July 9, 1995, Detective Reynaldo Guevara went to the scene of the shooting and tried to locate witnesses. He spoke with Davila, who was working on a car in the area. After conducting additional interviews, Guevara assembled a photographic array and showed it to Velasco and Ybarra, who was hospitalized. Velasco and Ybarra initially denied seeing the shooter but during follow-up interviews with the police, they ultimately identified Davila from the photos. Both Ybarra and Velasco also subsequently identified Davila as the shooter in a lineup.

At trial, Ybarra admitted that he did not immediately identify Davila from an array of photographs or admit that he knew anything about the shooting, explaining that he was afraid of being shot again and that he feared for the safety of his wife and children. He also stated that he eventually cooperated because, "it was the right thing to do." Velasco testified that he did not initially identify the shooter because he did not want to get involved, but later cooperated "because [he] was sure." The trial court found that the identification testimony was credible and thus convicted Davila of first degree murder and attempted first degree murder.

Before his sentencing, Davila filed a motion for a new trial, asserting that newly discovered evidence showed that he was not the shooter. Specifically, Christopher Lorenzi and Carlos Cotto gave Davila affidavits stating that they saw Philip (also known as Billy) Willis

empty a revolver into Ybarra's car and that Davila was not at the scene. Lorenzi and Cotto stated that they were friends of Davila's, and had known him for ten and eight or nine years respectively. The trial court again found that Ybarra and Velasco's identification testimony was credible. It also stated that it believed that Lorenzi and Cotto were members of the same gang that Davila belonged to, and that they were trying to protect him. The court thus denied Davila's motion for a new trial. Davila appealed this ruling. The Illinois Appellate Court affirmed, and Davila did not file a petition for leave to appeal ("PLA") with the Illinois Supreme Court.

Davila next filed a state post-conviction petition, contending that trial counsel was ineffective because he failed to call Lorenzi, Cotto, and Myriam Porras, Davila's girlfriend. In support, Davila attached the affidavits from Lorenzi and Cotto submitted in connection with his motion for a new trial, as well as an affidavit from Porras which stated that Davila had called her at the time of the shooting from a payphone a mile away, and that she had told Davila's counsel this information prior to the trial.

The trial court denied the post-conviction petition, explaining that Davila's ineffective assistance claim was waived because the basis for the claim was in the record so it could have been presented on direct appeal. Alternatively, it rejected Davila's claim on the merits under *Strickland v. Washington*, 466 U.S. 668, 687-91 (1984). Specifically, the court found that counsel's failure to subpoena the three witnesses did not fall below an objective standard of reasonableness because the record showed that the witnesses were close to Davila and that counsel could have made a strategic decision not to call them. It also noted that the evidence in the case was not closely balanced. It thus concluded that counsel was constitutionally effective, notwithstanding the waiver of this entire issue.

-4-

Davila appealed, contending that he did not waive his ineffective assistance claim because the record did not show that his lawyer spoke with the three new witnesses, and that in any event, his counsel was ineffective. The Illinois Appellate Court noted that affidavits in the trial record supported Davila's ineffective assistance argument and thus affirmed the trial court's finding of waiver. It also agreed with the trial court that testimony from the three new witnesses would not have changed the outcome of the trial. Finally, it held that Davila could not attack reasonable strategic decisions by counsel, such as counsel's decision not to call Porras because she was Davila's girlfriend. It thus affirmed the trial court. Davila filed an unsuccessful PLA raising the ineffective assistance argument.

He then filed a second state post-conviction petition based on new evidence which purportedly showed that he was actually innocent. In support, he pointed to affidavits from additional witnesses (Pedro Carmona and Samuel Matias) who stated that someone named Phil or Billy shot the victims. The trial court summarily dismissed the petition, finding that the new evidence was cumulative because other evidence submitted at trial also identified Phil/Billy as the shooter. It also observed that the affidavits were unpersuasive because they contained facts which were inconsistent with the rest of the record. For example, Carmona and Matias claimed that Ybarra's car contained four men and that Ybarra had rammed the car driven by the shooter, but Ybarra's car had three men and was covered with food debris with no evidence of front-end damage. It thus found that the new evidence was not so conclusive that it would have probably changed the result at trial.

Davila also unsuccessfully argued that during the hearing on his motion for a new trial, his trial counsel could not have raised an ineffective assistance of trial counsel because this

- 5 -

would be a conflict of interest. The appellate court affirmed across the board. Davila filed a PLA raising these issues, and the Illinois Supreme Court denied the PLA.

Davila's § 2254 petition asserts: (1) his trial counsel's failure to (a) adequately investigate information showing that someone else was the shooter, (b) call Lorenzi, Cotto, and Porras as witnesses, (c) subpoena Porra's phone records, and (d) adequately challenge Ybarra and Velaso's testimony by subjecting it to "meaningful adversarial testing" constitutes ineffective assistance; (2) Carmona and Matias' affidavits show that he is actually innocent; (3) his trial counsel's failure to introduce mitigating evidence at his sentencing hearing constitutes ineffective assistance; and (4) the trial court erred when it summarily dismissed his second state post-conviction petition because (a) he presented viable claims of actual innocence based on Carmona and Matias' affidavits, (b) the court should have appointed counsel, (c) his trial counsel could not have raised an ineffective assistance of trial counsel claim during his trial because this would have been a conflict of interest, (d) the court should have reconsidered the denial of his first state post-conviction petition.

## II. Discussion

### A. Threshold Matters

The court will begin by summarizing the rules governing exhaustion and procedural default and by recapping the standard of review that guides this court in resolving Davila's § 2254 petition.

#### 1. Exhaustion and Procedural Default

Before this court may reach the merits of Davila's federal habeas claims, it must consider whether he has exhausted his state remedies and avoided procedural default under Illinois law. *See Mahaffey v. Schomig*, 294 F.3d 907, 914-15 (7th Cir.2002).

### a. Exhaustion of State Court Remedies

To exhaust state court remedies, a petitioner must give the state courts an opportunity to act on each of his claims before he presents them to a federal court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). State remedies are exhausted when they are presented to the state's highest court for a ruling on the merits or when no means of pursuing review remain available. *Boerckel*, 526 U.S. at 844-45, 847; 28 U.S.C. § 2254(c). Here, Davila has exhausted his state court remedies because no state court relief is available to him at this stage in the proceedings.

### b. Procedural Default

Procedural default occurs when a petitioner fails to comply with state procedural rules. *Mahaffey*, 294 F.3d at 915. This occurs when the petitioner fails to pursue all appeals required by state law, *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991), or fails to fully and fairly present his federal claims to the state court, *Boerckel*, 526 U.S. at 844. It also occurs when the state court did not address a federal claim because the petitioner failed to satisfy an independent and adequate state procedural requirement, *Stewart v. Smith*, 536 U.S. 856 (2002). If an Illinois appellate court finds that a claim is waived, that holding constitutes an independent and adequate state ground. *Rodriquez v. McAdory*, 318 F.3d 733, 735 (7th Cir.2003).

Nevertheless, this court may still reach the merits of a procedurally defaulted claim if the petitioner establishes either cause for his failure to follow a rule of state procedure and actual prejudice, or that the default will result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). To establish a fundamental miscarriage of justice, the petitioner must present new and convincing evidence of his innocence by showing that it is more likely than not that no reasonable juror would convict him in light of the new evidence. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### 2. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petitioner is not entitled to a writ of habeas corpus unless the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). In *Williams*, the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *See id.* at 405.

With respect to the "unreasonable application" prong under § 2254(d)(1), a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 407. A state court's application of Supreme Court precedent is unreasonable if the court's decision was "objectively" unreasonable. *See Lockyer v. Andrade*, 123 S.Ct. 1166, 1174 (2003) (unreasonable application more than incorrect or erroneous). In order to be considered unreasonable under this standard, a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *See Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Searcy v. Jaimet*, 332 F.3d 1081, 1089 (7th Cir. 2003) (decision need not be well reasoned or fully reasoned and is reasonable if one of several equally plausible outcomes); *Schultz v. Page*, 313 F.3d 1010, 1015 (7th Cir. 2002) (reasonable state court decision must be minimally consistent with facts and circumstances of the case).

### B. Davila's Claims

#### 1. Ineffective Assistance

According to Davila, his trial counsel was ineffective because counsel failed to: (a) adequately investigate information showing that someone else was the shooter, (b) call Lorenzi, Cotto, and Porras as witnesses, (c) subpoena Porra's phone records, and (d) adequately challenge Ybarra and Velaso's testimony by subjecting it to "meaningful adversarial testing."

To render effective assistance of counsel under the Sixth Amendment to the United States Constitution, counsel's performance must satisfy the well-known *Strickland* standard. *See Strickland v. Washington*, 466 U.S. at 687-91. Under the first prong of the *Strickland* standard, Davila must show that his counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88. The second *Strickland* prong requires him to establish that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694. If a defendant fails to satisfy one of the *Strickland* prongs, the court's inquiry under *Strickland* ends. *See id.* at 697; *see also Hough v. Anderson*, 272 F.3d 878, 890 (7th Cir. 2002).

The state court correctly cited and summarized the applicable Supreme Court precedent (*Strickland*) so its decision is not "contrary to" clearly established Supreme Court law. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. at 405. The court thus turns to whether the state court unreasonably applied the controlling law to the facts of this case. The state court held that these witnesses – Davila's girlfriend and fellow gang members, who came forward after his trial – were all interested parties who came forward to protect Davila and that the other evidence against Davila was "clear and credible." The court also noted that Davila did not contest the fact that Lorenzi and Cotto were biased because they were members of the same gang as Davila. It

also held that counsel's decision not to call these witnesses was a reasonable strategic choice given that their bias in favor of Davila negatively affected their credibility. Finally, it stressed that the evidence in the case was "not closely balanced" so adding what can only be characterized as weak evidence in support of Davila would not have been reasonably likely to alter the result.

As noted above, a state court's decision can only be an unreasonable application of clearly established Supreme Court precedent if it lies "well outside the boundaries of permissible differences of opinion." This is not the case here. Lorenzi and Cotto admitted that they had known Davila for a substantial length of time, and the court cannot second-guess the trial court's finding that Ybarra and Velasco's trial testimony was credible and that Lorenzi and Cotto's post-trial affidavits were attempts to protect their friend and fellow gang member.

With respect to counsel's failure to subpoena Porras's phone records, it is well-established that a "petitioner cannot meet [the *Strickland* ] burdens absent a specific, affirmative showing as to what the missing evidence or testimony would have been." *U.S. ex rel. McCall v. O'Grady*, 908 F.2d 170, 173 (7th Cir. 1990). Here, Davila provides only speculation as to what the phone records would have shown. Because he did not locate this information and properly present it to the state courts, this purported evidence cannot support a grant of federal habeas relief.

Davila's claim that his lawyer did not adequately challenge Ybarra and Velaso's testimony by subjecting it to "meaningful adversarial testing" is similarly unsupported. Even when broadly construed, the court cannot ascertain what Davila thinks his lawyer should have done. Moreover, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound

trial strategy." *See Strickland*, 466 U.S. at 689 (internal citations and quotations omitted). Davila has not met this burden so this claim must fail.

### 2. Actual Innocence

Next, Davila contends that he is entitled to habeas relief because Carmona and Matias' affidavits show that he is actually innocent. He also approaches this argument from another angle by asserting that the trial court erred when it summarily dismissed his second state post-conviction petition because he presented viable claims of actual innocence based on Carmona and Matias' affidavits.

Actual innocence is a gateway which allows a habeas petitioner to obtain review of otherwise procedurally barred claims, as opposed to a Monopoly-style "get out of jail free" card. In any event, to show "actual innocence," a petitioner must present clear and convincing evidence that, but for the alleged error, no reasonable juror would have convicted him. *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002), *citing Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Carmona and Matias' affidavits are two pieces of evidence that favor Davila, but much of the evidence presented at trial did not favor him. The affidavits, therefore, are not clear and convincing evidence that show that, but for the alleged error, no reasonable juror would have convicted him. Moreover, Davila has not established that the state court's rejection of his arguments based on the affidavits was either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. Davila's actual innocence argument thus fails.

### 3. Mitigating Evidence

Davila also challenges a number of rulings made in connection with his second state post-conviction petition. First, he contends that his trial counsel's failure to introduce mitigating

evidence about his background during his sentencing hearing constitutes ineffective assistance. In support, he attaches an affidavit from his aunt executed in May of 2004. This claim is procedurally defaulted because it appears for the first time in Davila's § 2254 petition. *See Castille v. Peoples*, 489 U.S. 346, 349 (1989) (failure to present claim to state intermediate court means that it is procedurally barred); *Boerckel*, 526 U.S. at 844 (failure to present claim to state's highest court means that it is procedurally barred).

A federal court may not grant relief on a procedurally defaulted claim unless the petitioner can establish cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that the court's failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. at 750. Although Davila does not contend that cause and prejudice or the fundamental miscarriage of justice exceptions excuse his default, the court will nevertheless consider whether these exceptions can help him.

Cause exists where "some objective factor external to the defense impeded [the petitioner's] efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 282 (1999). Here, Davila failed to properly follow state procedural rules as he could have raised this argument in his state post-conviction proceedings. Nothing in the record before the court indicates that an objective factor prevented him from doing so. Thus, cause does not excuse his default.

The fundamental miscarriage of justice exception is also inapplicable because "this relief is limited to situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Dellinger v. Bowen*, 301 F.3d at 767, *citing Schlup v. Delo*, 513 U.S. 298, 327 (1995). To show "actual innocence," a petitioner must present clear and

convincing evidence that, but for the alleged error, no reasonable juror would have convicted him. *Id.* Davila's petition, as well as the state court pleadings submitted to the court, do not contain any substantiated allegations of actual innocence showing that, but for the alleged error, no reasonable juror would have convicted him. Thus, this exception does not apply.

### 4. Appointment of Counsel and Reconsideration of the Denial of State Post-Conviction Relief

Davila also argues that the court should have appointed counsel and reconsidered the denial of his first state post-conviction petition. These arguments rest entirely on state law. Moreover, Davila does not contend that the state court's rulings are at odds with any United States Supreme Court authority. His request for federal habeas relief based on alleged violations of state law is, therefore, doomed as this court may only address the merits of claims based on "alleged violations of the federal constitution, laws and treaties." *See Biskup v. McCaughtry*, 20 F.3d 245, 247 (7th Cir. 1994) ("§ 2254 cannot be invoked simply . . . to review alleged violations of state law").

### 4. Conflict of Interest

Finally, Davila contends that his trial counsel could not have raised an ineffective assistance of trial counsel claim at the post-trial stage because a conflict of interest prevented counsel from arguing that he was incompetent. The Illinois Appellate Court held that the merits of an underlying allegation of incompetence determine whether a conflict of interest exists. In other words, there can be no conflict of interest when an attorney is, in fact, competent. It then found that the outcome would have been the same even if counsel had subpoenaed Lorenzi and Cotto. In addition, it noted that Davila had never asserted that his lawyer was conflicted or that he was dissatisfied with his representation. It thus rejected Davila's conflict argument in its

entirety, stating that there was no conflict so the trial court could not have erred by failing to raise this issue sua sponte.

No automatic presumption that a conflict of interest exists arises when an attorney argues post-trial that he was ineffective during or before trial. *Johnston v. Mizell*, 912 F.2d 172, 175-76 (7th Cir. 1990). Moreover, the court has already found that counsel's actions vis-a-vis Lorenzi and Cotto were neither "contrary to" or "an unreasonable application of" *Strickland*. Therefore, even if the court assumes that counsel believed that his performance was sub-par but didn't say so because he didn't want to criticize his own performance, the result is the same: whether counsel raised this argument or not, the outcome would not have changed because counsel's failure to call Lorenzi and Cotto was within the range of constitutionally effective assistance.

### III. Conclusion

For the above reasons, Davila's § 2254 petition [1-1] is denied.

DATE: 10-8-04

Blanche M. Manning
United States District Court Judge

04cv4112.hab